IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

NOR COMMUNITY MENTAL HEALTH
CORP.

      Plaintiff,

      v.                                            CIVIL NO.: 09-1000 (MEL)

SECRETARY OF HEALTH and HUMAN
RESOURCES

      Defendant.

**OPINION AND ORDER**

**I.    STATUTORY BACKGROUND**

Title XVIII of the Social Security Act, also referred to as the Medicare Act, 42 U.S.C. §§ 1395 et seq., establishes a program of health insurance for the elderly and disabled. The present case falls under Medicare Part B, which is a voluntary supplemental program that covers payment to physicians and other health service providers. 42 U.S.C. §§ 1395j et seq. The Medicare Act provides that no payment may be made under Part B for any expenses incurred that are not "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." 42 U.S.C. § 1395y(a)(1)(A). The Centers for Medicare and Medicaid ("CMS"), part of the United States Department of Health & Human Services ("HHS"), administers the Medicare program and contracts with carriers to, among other things, make determinations regarding the reasonableness and medical necessity of services billed to the Medicare program in order to only pay those claims that satisfy all the coverage criteria established by the

1

Medicare program. See 42 U.S.C. §§1395u, 1395ff. The Secretary of HHS requires Medicare contractors to implement local medical review policies ("LMRPs") – now referred to as Local Coverage Determinations ("LCDs") – to aid in evaluating whether a particular service is reasonable for a given diagnosis or diagnosis code. See 42 C.F.R. § 400.202. LMRPs and LCDs are promulgated by regional carriers in the absence of a National Coverage Determination ("NCD") and "embod[y] the majority view of local health care providers regarding the medical necessity of a certain good or service." Arruejo v. Thompson, 2001 U.S. Dist. LEXIS 24446, at *10 (E.D.N.Y. July 3, 2001). In order to verify that payments made by them were correct, carriers are authorized to conduct post-payment audits, and may enlist program safeguard contractors to perform this task. 42 U.S.C. § 1395ddd; 42 C.F.R. § 421.500. Where it is determined that the physician or supplier in question has received an overpayment by Medicare, that physician or supplier is liable for the overpayment unless found to be without fault. See 42 U.S.C. § 1395pp.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

In January 2005, NOR Community Mental Health, Corp. ("NOR" or "plaintiff") received notice that an audit conducted by TriCenturion, a CMS program safeguard contractor, showed that plaintiff had received an overpayment from Medicare for services provided to 73 beneficiaries by Dr. Héctor Avilés López ("Dr. Avilés-López") and social worker Carmen Aponte Rivera ("Aponte Rivera"), who were under contract with plaintiff. See Administrative Record ("A.R.") at 00362-63, 00426-28, 00487-89. The audit focused on a random statistical sample of psychiatric and psychological services provided by Avilés-López and Aponte Rivera in 2003. See A.R. at 00036. The sample consisted of services provided to 29 beneficiaries during 30 therapy sessions by Dr. Avilés-López and to 44 beneficiaries during 60 sessions by Aponte Rivera. Id. TriCenturion

determined, *inter alia*, that all of the reviewed claims concerning Dr. Avilés-López i) failed to prove medical necessity, ii) failed to provide required documents, and iii) were "essentially not legible." See A.R. at 00442-443.  TriCenturion also found that the services billed on behalf of Aponte Rivera did not satisfy the coverage criteria of the policy implemented by the carrier. See A.R. at 00505-06. Extrapolating these findings to the universe of claims paid to NOR under codes 90801, 90812, 90813, 90853, 90857, and 90862 for services provided in 2003, TriCenturion calculated a combined overpayment of $138,196.95.  See A.R. at 00364; 00426-28, 00487-89.

Plaintiff sought review by a Fair Hearing Officer ("FHO"), who issued a partially favorable decision on March 31, 2006, resulting in a recalculation of the overpayment to $102,575.01. See A.R. at 00361-401.  The FHO determined that fourteen of plaintiff's claims that had been denied in the original overpayment calculation were payable under alternative codes, and otherwise denied plaintiff's claims.  See A.R. at 00035; 00376; 00379; 00436-38; 00497-99.  Furthermore, the FHO determined that plaintiff was not entitled to a waiver of liability, concluding that the provider knew or should have known that services relating to the overpayment were not covered under the Medicare program.  See A.R. at 00388.

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), who confirmed the FHO's findings in a September 19, 2007 order.  See A.R. at 00035-60, 00358.  Plaintiff attempted to appeal the ALJ's decision to the Medicare Appeals Council ("MAC").  See A.R. at 00008-34.  However, on October 31, 2008 the MAC denied plaintiff's request for review, citing plaintiff's failure to state any specific exceptions or basis for its appeal.  See A.R. at 00003-04. Accordingly, the ALJ decision constitutes the final decision of the Secretary of HHS, and is the basis for the instant action.  Id.

On January 5, 2009, plaintiff filed a complaint in this case against the Secretary of the Department of HHS ("Secretary" or "defendant") pursuant to 42 U.S.C. § 1395ff(b), seeking review of the ALJ's ruling. (Docket No. 1.) Defendant filed an answer on May 15, 2009 and filed a certified administrative record of the relevant proceedings on September 7, 2010. (Docket Nos. 7; 21.) Pending before the court is defendant's motion, filed July 29, 2010, for judgment on the pleadings.[1] (Docket No. 10.) Plaintiff filed an opposition, defendant replied, and plaintiff filed a sur-reply. (Docket Nos. 23; 26; 29.)

III. LEGAL ANALYSIS

   A.   Judicial Review Standard

Judicial review of administrative determinations with respect to Medicare benefits is governed by 42 U.S.C. § 1395ff(b)(1)(A), which incorporates the provisions of Section 205(g) of the Social Security Act. See Estate of Landers v. Leavitt, 545 F.3d 98, 113 (2d Cir. 2008). Section 205(g) provides, *inter alia*, that "[t]he court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Secretary], with or without remanding the cause for a rehearing," and that "[t]he findings of the [Secretary] as to any fact, if supported by substantial evidence, shall be conclusive."[2] 42 U.S.C. § 405(g) (2000).

In such cases, the court must examine the record and uphold the Secretary's final decision denying payment "unless the decision is based on a faulty legal thesis or factual error." López

---

[1] While defendant's motion is titled a motion for judgment on the pleadings and/or for summary judgment, since defendant did not submit a statement of uncontested fact or cite in its motion to the relevant summary judgment standard, the court will construe the instant motion solely as one for judgment on the pleadings. (Docket No. 10.)

[2] Pursuant to the statute, any reference to the "Commissioner of Social Security" or the "Social Security Administration" in subsection (g) or (l) of section 205 shall be considered a reference to the "Secretary" or the "Department of Health and Human Services," respectively. See 42 U.S.C. § 1395ff(b)(1)(A).

4

Vargas v. Comm'r of Soc. Sec., 518 F.Supp.2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996)). The Secretary's "findings of fact are conclusive when supported by substantial evidence in the record, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (citing Da Rosa v. Sec'y of Health and Human Servs., 803 F.2d 24, 26 (1st Cir. 1986); Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401(1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3rd Cir. 1971), cert. denied, 402 U.S. 976 (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Irlanda-Ortíz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). "The resolution of conflicts in the evidence and the determination of the ultimate question of disability is for the ALJ, not for the doctors or for the reviewing [c]ourts." López Vargas, 518 F.Supp.2d at 335 (citing Richardson, 402 U.S. at 399; Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). Therefore, the court "must affirm the Secretary's resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (citing Lizotte v. Sec'y of Health and Human Servs., 654 F.2d 127, 128 (1st Cir. 1986)).

## B. Claims Regarding Services Provided by Dr. Avilés-López

Regarding claims based on services provided by Dr. Avilés-López, the ALJ confirmed the FHO's determinations as to all claims under codes 90801, 90862 and 90813, downcoding 8 claims and denying all others. See A.R. at 00046.

Code 90801

Code 90801 refers to a psychiatric diagnostic interview examination. See A.R. at 00039. In confirming TriCenturion's denial of plaintiff's claims as to Beneficiary 19 under this code, the ALJ stated that "the documentation did not establish that the services billed were provided, that they were medically necessary, and that the code billed corresponded to the services provided."[3] A.R. at 00048.

LMRP 13009 – the relevant coverage policy implemented by the carrier for psychiatry and psychology services – states that the documentation for claims coded 90801 must include the following elements: the name of the beneficiary and date of service, the reasons for referral with a history of the presenting problem, pertinent medical, social and family history, clinical observations and mental status examination, a present evaluation, diagnosis, recommendations, and the identity of the provider of service.[4] (Docket No. 30-1, p. 3.) In denying the claim, TriCenturion stated that the medical record "did not accurately reflect the elements outlined for procedure 90801," citing, among other things, the provider's failure to document i) a complete medical and psychiatric history, ii) a working diagnosis, iii) an evaluation of the patient's ability and willingness to participate in the

---

[3] The appendix attached to the ALJ opinion incorrectly lists this claim as "allowed." See A.R. at 00052, 00376.

[4] While LMRPs are only binding in the initial adjudication and during the preliminary appeals stages, they do not bind ALJs or the federal courts. See Erringer v. Thompson, 371 F.3d 625, 631 (9th Cir. 2004). However, ALJs give substantial deference to LMRPs if they are applicable to a particular case. See A.R. at 00042.

treatment plan, and iv) a complete mental status examination, including analysis of attention span, language faculty, fund of knowledge, and the source of the information contained in the examination. See A.R. at 00482-83.

A review of the record leads this court to conclude that the ALJ's findings were based on substantial evidence. See A.R. at 00777-802 (among other things, the medical file lacks complete medical and psychiatric history from relevant date of service). Therefore, the court hereby AFFIRMS the ALJ's denial of plaintiff's claims under code 90801 as to Beneficiary 19.

Code 90862

Code 90862 refers to "[p]harmacologic management, including prescription, use, and review of medication with no more than minimal medical psychotherapy." A.R. at 00442. The code is not intended to refer to a brief evaluation of the patient's state or to dosage adjustments of long-term medications, but rather to the "in-depth management of psychopharmacologic agents with potent medications with frequent serious side effects." A.R. at 00446-47. The ALJ denied claims as to Beneficiaries 6 and 8 (1 claim) under this code, stating that "the documentation did not establish that the services billed were provided, that they were medically necessary, and that the code billed corresponded to the services provided."[5] See A.R. at 00048.

LMRP 13009 states that in order to properly code a claim as 90862, the progress note must support that in-depth psychopharmacologic management was provided, such as by including the patient's diagnosis, pertinent signs and symptoms, the prescribed medication(s) and their dosages, the patient's response to the treatment, the rationale for maintaining or changing the drug regimen, and/or an interval history that documents any pertinent changes since the last session (e.g.

---

[5] Regarding Beneficiary 8 (1 claim), the appendix attached to the ALJ opinion incorrectly states that the FHO downcoded plaintiff's claim to code M0064, but the FHO in fact denied said claim. See A.R. at 00052, 000376.

medication side effects, drug interactions, drug allergies, relevant patient education, and patient treatment plans and goals and any changes in the plan of care). (Docket No. 30-1, pp. 8-9.) The medical record should also "reflect the management of any interactions between any general medical conditions and the psychopharmacologic management, the ordering/review of pertinent laboratory studies, and patient/family education." (Docket No. 30-1, p. 9.)

TriCenturion denied plaintiff's claims under code 90862 due to the provider's i) failure to document an in-depth management of psychopharmacologic agents, or any potentially serious side effects, ii) documentation of only a brief evaluation of the patient's state coupled with a listing of the patient's medications, and iii) failure to document the medical necessity of the chosen treatment. See A.R. at 00462-63 (Beneficiary 6, JCF), 0446-48 (Beneficiary 8, LD, DOS 3/6/03). The FHO confirmed TriCenturion's findings, as did the ALJ. See A.R. at 00048, 00376.

Plaintiff misstates the ALJ's basis for denying plaintiff's claim as to Beneficiary 6, and otherwise points to no evidence on the record to dispute the ALJ's findings. (Docket Nos. 23; 29.) See A.R. at 00690-95 (Beneficiary 6, JCF) (medical files merely list prescribed medications without including any side effects and without providing any rationale for maintaining or changing the drug regimen); 00954-61 (Beneficiary 8, LD, DOS 3/6/03) (same). Therefore, the court concludes that the ALJ's determinations regarding Beneficiaries 6 and 8 were based on substantial evidence and hereby AFFIRMS the ALJ's findings denying claims as to said beneficiaries.

Code 90813

Code 90813 refers to services involving "[i]ndividual psychotherapy, interactive using play equipment, physical devices, language interpreter, or other mechanism of non-verbal communication, in an office or other outpatient facility, approximately 45 to 50 minutes face-to-face

with the patient; with medical evaluation and management services." See A.R. at 00372. Confirming the FHO's findings, the ALJ denied claims under this code in their entirety as to Beneficiaries 1-5, 7, 10-12, 14-18, 20, 22, 24, 26-28 and downcoded claims as to Beneficiaries 8 (1 claim), 9, 13, 21, 23, 25 and 29 to the lesser rate payable under code M0064, which refers to a "brief office visit for the sole purpose of monitoring or changing a drug prescription."[6] See A.R. at 00046-47, 00376; (Docket No. 30-1, p. 9.) As the instant motion is based on plaintiff's objection to the ALJ's denial of its claims under various codes – including 90813 – rather than its decision to pay some of those claims at a lower rater, the court will not analyze whether the ALJ's determination that the downcoded claims satisfied the requirements under the lesser codes was based on substantial evidence. Indeed, plaintiff raises no specific argument regarding any of the downcoded claims. (Docket Nos. 23; 29.)

In denying plaintiff's claims under code 90813, the ALJ stated that the progress notes provided in each beneficiary's medical records "d[id] not satisfy the documentation and medical necessity requirements established by the Carrier's policy for code 90813." See A.R. at 00047. As an initial matter, the record as to Beneficiary 15 contains no progress notes of any kind, and the ALJ's determination as to this claim is hereby AFFIRMED due to lack of documentation. See A.R. 00751-52.

LMRP 13009 states that the medical records under code 90813 must indicate the "time spent in the psychotherapy encounter and the therapeutic maneuver, such as behavior modification, supportive interactions, and interpretation of unconscious motivation that were applied to produce

---

[6] The ALJ opinion incorrectly states that 2 claims as to Beneficiary 8 were initially coded 90813, whereas the second claim as to Beneficiary 8 was in fact coded 90862. See A.R. at 00047, 00052. Furthermore, while the ALJ found that the claims regarding 21 beneficiaries were denied in their entirety under code 90813, the opinion only lists 14 of them. See A.R. at 00047. However, all of the claims are accounted for in the appendix attached to the ALJ's opinion. See A.R. at 00052.

therapeutic change." See A.R. at 00373; (see Docket No. 30-1, p. 5.) In addition, the documentation must include the need for interactive therapy and must show how the psychotherapy was used to help the patient's problem. See A.R. at 00373-74; (see Docket No. 30-1, p. 5.) The policy indicates that the clinical note should also include i) medication prescriptions and monitoring, ii) counseling session start and stop times, iii) the modalities and frequencies of treatment furnished, and iv) the results of clinical tests and any summaries of the following: diagnosis, functional status, treatment plan, symptoms, prognosis, and progress to date. Id.

The ALJ specifically focused on the carrier's requirement that the documentation include start times and end times for face-to-face therapeutic sessions. See A.R. at 00047; (see Docket No. 30-1, p. 5.) For the beneficiaries in question, the original progress notes – handwritten in Spanish – only included a start time, and gave no indication of the length of any of the sessions. See A.R. at 00662 (Beneficiary 1, RAB), 00668 (Beneficiary 2, PAD), 00674 (Beneficiary 3, CCV), 00680 (Beneficiary 4, MCR), 00686 (Beneficiary 5, RC), 00698 (Beneficiary 7, CC), 00957 (Beneficiary 8, LD, DOS 10/28/03), 00704 (Beneficiary 9, DD), 00733 (Beneficiary 10, SDL), 00739 (Beneficiary 11, EF), 00745-46 (Beneficiary 12, FGC),  01013-14 (Beneficiary 13, AJ), 00755 (Beneficiary 14, CAL), 00761 (Beneficiary 16, EMN), 00767 (Beneficiary 17, EQB), 00773 (Beneficiary 18, ARG), 00805 (Beneficiary 20, MRM), 00810 (Beneficiary 21, BR), 00843 (Beneficiary 22, BR), 00849 (Beneficiary 23, AR), 00884 (Beneficiary 24, AS), 00892 (Beneficiary 25, JS), 00909 (Beneficiary 26, FVL), 00915 (Beneficiary 27, CVS), 00921 (Beneficiary 28, AV), 00927 (Beneficiary 29, AV).

When the progress notes were subsequently transcribed and translated for purposes of the post-payment audit, end times were added to the notes. See A.R. 00047; see, e.g., A.R. at 00660-62. The ALJ refused to accept the end times included in the transcribed and translated progress notes,

stating that "[t]his inconsistent translation appears to be deliberate and destroys the credibility of [plaintiff] and the translations provided." A.R. at 00047. The ALJ's determination is supported by the testimony of the billing transcriptionist, who could not point to anything in the documentation indicating a stop time or demonstrating that the services in question took 45 to 50 minutes, as required.[7] Id. While the transcriptionist did state that a "roster of the services rendered," which was not included in the record, indicated the time spent with each patient, the ALJ refused to admit said document as an exhibit, determining that no good cause had been shown for doing so post-hearing.[8] See A.R. at 00036; A.R. at 01474-75; see 42 C.F.R. § 498.56(e) ("[i]f the ALJ determines that there was not good cause for submitting the evidence for the first time at the ALJ level, the ALJ must exclude the evidence from the proceeding and may not consider it in reaching a decision."). While plaintiff argues that the ALJ abused its discretion by disregarding the end times documented in the transcribed and translated medical notes, the court finds that the ALJ acted within his discretion. (Docket No. 23, p. 10); see Mercier v. Secretary of Health & Human Servs., 1995 U.S. App. LEXIS 27531, at *16 (1st Cir. Sept. 25, 1995) ("[t]he ALJ's credibility determination "is entitled to deference, especially when supported by specific findings.") (quoting Frustaglia v. Secretary of Health and Human Services, 829 F.2d 192, 195 (1st Cir. 1987)).

Moreover, contrary to plaintiff's mischaracterization of the ALJ's decision, plaintiff's failure to document the duration of the therapeutic sessions at issue was not the sole basis for the claims' denial under code 90813, as the ALJ also found that plaintiff failed to satisfy the medical necessity requirement. (Docket No. 23, p. 11); see A.R. at 00047. TriCenturion likewise denied plaintiff's

---

[7] Dr. Avilés-López did not appear or testify at the hearing. See A.R. at 00047.

[8] While plaintiff claims that the log sheets were submitted after the hearing "upon [the ALJ's] request," plaintiff does not provide any reference to the record indicating that such a request was made. (Docket No. 23, p. 7.)

claims as to the beneficiaries at issue on both grounds, citing plaintiff's failure to document i) the time spent in the psychotherapy encounter and the therapeutic maneuvers that were applied, ii) the need for interactive therapy, iii) the medical necessity of the treatment in the medical record, iv) the patient's inability to interact by normal verbal communication, v) a continuing medical diagnostic evaluation, and vi) the physical devices or other mechanisms of non-verbal communication used to provide interactive therapy.[9] See A.R. at 00467-68 (Beneficiary 1, RAB), 00478-80 (Beneficiary 2, PBD), 00473-75 (Beneficiary 3, CCV), 00459-60 (Beneficiary 4, MCR), 00453-54 (Beneficiary 5, RC), 00472-73 (Beneficiary 7, CC), 00446-48 (Beneficiaries 8 (2 claims), LD), 00463-64 (Beneficiary 9, DD), 00460-62 (Beneficiary 10, SDL), 00468-69 (Beneficiary 12, FGC), 00451-53 (Beneficiary 13, AJ), 00464-65 (Beneficiary 16, EMN), 00458-59 (Beneficiary 17, EQB), 0000477-78 (Beneficiary 18, ARG), 00455-56 (Beneficiary 20, MRM), 00481-82 (Beneficiary 21, BR), 00454-55 (Beneficiary 22, BR), 00469-71 (Beneficiary 23, AR), 00480-81 (Beneficiary 24, AS), 00475-76 (Beneficiary 25, JS), 00465-67 (Beneficiary 26, FVL), 00471-72 (Beneficiary 27, CVS), 00476-77 (Beneficiary 28, AV), 00456-58 (Beneficiary 29, AV).

Plaintiff does not address the ALJ's finding that the claims lacked the requisite medical necessity, nor does a review of the record suggest that the ALJ's determinations were not based on substantial evidence. (Docket Nos. 23; 29); see A.R. at 00660-65 (Beneficiary 1, RAB), 00666-71 (Beneficiary 2, PBD), 00672-77 (Beneficiary 3, CCV), 00678-83 (Beneficiary 4, MCR), 00684-89 (Beneficiary 5, RC), 00686-701 (Beneficiary 7, CC), 00954-69 (Beneficiaries 8 (2 claims), LD), 00702-30 (Beneficiary 9, DD), 00731-36 (Beneficiary 10, SDL), 00737-42 (Beneficiary 11, EF),

---

[9] TriCenturion denied claims under code 90813 as to Beneficiaries 11 and 14 because the "medical record[s] did not contain the information that was required for [the] review." See A.R. at 00448-49 (Beneficiary 11, EF), 00451 (Beneficiary 14, CAL).

00743-50 (Beneficiary 12, FGC), 01011-26 (Beneficiary 13, AJ), 00753-58 (Beneficiary 14, CAL), 00759-64 (Beneficiary 16, EMN), 00765-70 (Beneficiary 17, EQB), 00771-76 (Beneficiary 18, ARG), 00803-08 (Beneficiary 20, MRM), 00809-40 (Beneficiary 21, BR), 00841-46 (Beneficiary 22, BR), 00847-83 (Beneficiary 23, AR), 00884-89 (Beneficiary 24, AS), 00890-906 (Beneficiary 25, JS), 00907-12 (Beneficiary 26, FVL), 00913-18 (Beneficiary 27, CVS), 00919-24 (Beneficiary 28, AV), 00925-41 (Beneficiary 29, AV).  Therefore, the court hereby AFFIRMS the ALJ's determinations as to all beneficiaries coded 90813.

### C. Claims Regarding Services Provided by Aponte Rivera

Regarding claims based on services provided by Aponte Rivera, the ALJ confirmed the FHO's determinations as to all claims under codes 90801, 90812, 90853, and 90857, downcoding 6 claims under code 90812 and denying all other claims.[10]  See A.R. at 00048.

Lack of Medical Records

Plaintiff did not provide any records to the ALJ to support payment for services billed by Aponte Rivera for the following beneficiaries: 31, 32 (2 claims), 35, 38 (2 claims), 39, 41, 42, 44, 45 (3 claims), 47, 48, 49 (2 claims), 50, 52 (2 claims), 53, 55, 57, 62, 63, 71 (3 claims), and 73.  See A.R. at 00048, 01093-95 (Beneficiary 31, JB), 1096-98 (Beneficiary 32, CB), 01116-18 (Beneficiary 35, OC), 01135-37 (Beneficiary 38, EDF), 01138-40 (Beneficiary 39, VDS), 01177-79 (Beneficiary 41, GFS), 01180-82 (Beneficiary 42, AG), 01193-95 (Beneficiary 44, MH), 01196-98 (Beneficiary 45, LL), 01202-04 (Beneficiary 47, ML), 01205-07 (Beneficiary 48, ML), 01208-10 (Beneficiary 49, AL), 01211-13 (Beneficiary 50, LL), 01219-21 (Beneficiary 52, PM), 01222-24 (Beneficiary 53, AM), 01231-33 (Beneficiary 55, EM), 01234-36 (Beneficiary 57, JM), 01304-06 (Beneficiary 62,

---

[10]The only claim brought under code 90857 – Beneficiary 49 (DOS 5/15/03) – was denied for lack of medical records.  See A.R. at 00048.

LR), 01307-09 (Beneficiary 63, ARA), 01383-85 (Beneficiary 71, RT), 01419-21 (Beneficiary 73, MV). The ALJ therefore dismissed plaintiff's claims on that basis. See A.R. at 00048.

Further, a review of the record reveals that while plaintiff submitted medical files regarding Beneficiaries 30 (2 claims), 33, 33, 56, 66, 69 (2 claims), 70, and 72, plaintiff did not include certified translations of the progress notes for the dates of service in question (or at all in some cases). (Docket No. 10, pp. 33-34); see A.R. at 01099-1115 (Beneficiary 30, MA) (no translation included for relevant date of service); 001047-73 (Beneficiary 33, MC) (no translation included); 01027-46 (Beneficiary 56, SM) (no translation included); 01323-27 (Beneficiary 66, LR) (no translation included for relevant date of service); 01328-32 (Beneficiary 69, RR) (2 claims) (no translation included for relevant dates of service); 01360-82 (Beneficiary 70, CS) (no translation included for relevant date of service); 01386-1418 (Beneficiary 72, HV) (no translation included for relevant date of service). It is well-settled that the court will not consider materials submitted in a language other than English without a certified translation. See Local Civil Rule 10(b); Aguiar-Carrasquillo v. Agosto-Alicea, 445 F.3d 19, 24 (1st Cir. 2006) ("In the past, we have refused to consider materials submitted to the court in any language other than English, and we continue to do so."). Therefore, the court will treat these beneficiaries' claims as being unsupported by the record.

Regarding Beneficiaries 46 and 54, while claimant did submit translated medical records regarding services provided to those beneficiaries, the ALJ did not admit those records into evidence, determining that good cause had not been shown since claimant had never entered the original handwritten medical records for the dates of service in question. (Docket No. 10, p.

32); see 42 C.F.R. § 498.56(e); A.R. at 00036; 00083 (Beneficiary 46, CJL); 00084 (Beneficiary 54, FM). These beneficiaries' claims are thus considered unsupported.

Based on the foregoing, the court finds that the ALJ's determinations regarding the above beneficiaries were based on substantial evidence and hereby AFFIRMS the ALJ's denial of plaintiff's claims regarding said beneficiaries.

Code 90801

The ALJ also denied claims as to Beneficiaries 34, 37 and 64 under code 90801 (described above), finding that initial psychiatric evaluations can be properly billed only by a psychiatrist, not by a social worker, such as Aponte Rivera.[11] See A.R. at 00049. Plaintiff does not dispute this finding (Docket Nos. 23; 29), and TriCenturion and the FHO made identical determinations. See A.R. at 00379; 00558-60 (Beneficiary 34, JCR) ("the medical record documentation reflects an "Initial Psycho-Social Evaluation" ... [that] is not consistent with a ... "Psychiatric Diagnostic Interview Examination."); 00548-49 (Beneficiary 37, NCL) ("[t]he provider of services failed to submit a Psychiatric Interview Examination. The provider submitted a Psychosocial Evaluation."), 00525-26 (Beneficiary 64, IRO) ("[t]he prover of services failed to document a Psychiatric Interview Examination."). Further, the carrier's medical director testified during the ALJ hearing that "... a social worker cannot give medical evaluation and management because that requires prescribing medications and a social worker cannot prescribe medications." A.R. at 01494. Therefore, the court finds that the ALJ's determinations regarding Beneficiaries 34, 37 and 64 were based on substantial

---

[11] While the ALJ also denied claims concerning Beneficiaries 30, 39, 50, 55, 63 and 73 under code 90801, these claims were properly denied above for plaintiff's failure to submit proper medical records and will not be analyzed for purposes of this motion under code 90801. See A.R. 00048-49.

evidence and hereby AFFIRMS the ALJ's denial of plaintiff's claims concerning said beneficiaries.

Code 90812

Similar to code 90813, code 90812 refers to "individual psychotherapy, interactive using play equipment, physical devices, language interpreter, or other mechanism of non-verbal communication, in an office or other outpatient facility, approximately 45 to 50 minutes face-to-face with the patient." A.R. at 00039.

Confirming the FHO's determination, the ALJ denied claims under this code in their entirety as to Beneficiaries 33, 36, 40, 43 (4 claims), 51, 56 (2 claims), 61 (2 claims), 67, 70, and 72 and downcoded the following claims: i) Beneficiaries 59 and 68 to code 90816, ii) Beneficiaries 58 and 60 to code 90818, and iii) Beneficiaries 56 (1 claim) and 65 to code 90853.[12] See A.R. at 00048. As the instant motion is based on plaintiff's objection to the ALJ's denial of its claims under various codes – including 90812 – rather than its decision to pay some of those claims at a lower rater, the court will not analyze whether the ALJ's determination that the downcoded claims satisfied the requirements of the lower codes was based on substantial evidence. Indeed, plaintiff raises no specific argument regarding any of the downcoded claims. (Docket Nos. 23; 29.)

In denying plaintiff's claims under this code, the ALJ stated that the records provided did not document the provision of services included in the definition of code 90812 and that the medical records did not "document a diagnosis and/or condition requiring equipment or devices to assist in the communication with each of the Beneficiaries." See A.R. at 00049.

---

[12] While the ALJ also denies claims under code 90812 concerning Beneficiaries 33, 35, 38, 41, 42, 44-49, 52-54, 56, 57, 62, 66, 69 (2 claims), 70 and 73, these claims were already properly denied above for failure to submit proper medical records and will not be analyzed for purposes of this motion under code 90812. See A.R. 00049.

As described more fully above, the ALJ was within his discretion in determining that the inclusion of end times for therapeutic sessions in the transcribed and translated progress notes was not reliable.  See A.R. at 00039; see Mercier, 1995 U.S. App. LEXIS 27531 at *16.  Furthermore, plaintiff does not point to anywhere on the record to suggest that the ALJ's finding that the provider failed to document the beneficiaries' need for the therapy at issue was not supported by substantial evidence.  (Docket No. 30-1, p. 5); see A.R. at 00049; 00568-69 (Beneficiary 36, MCB) (patient's conversation described as "soft and slow"); 01141-76 (Beneficiary 40, HF) (documentation demonstrates patient capable of expressing feelings about being in nursing home); 01183-92 (Beneficiary 43, VG) (therapy consists of exercise in which patient articulates verbally); 00557-58 (Beneficiary 51, SM) (finding plaintiff failed to document beneficiary's inability to interact, as record show patient was allowed to "ventilate"); 01294-1303 (Beneficiary 61, PP) (patient conversation described as "soft/slow"); 01328-32 (Beneficiary 67, RR) (patient "expresses feelings towards the exercise").

Based on the foregoing, the court finds that the ALJ's determinations concerning claims under code 90812 were based on substantial evidence, and the court hereby AFFIRMS the ALJ's determinations as to all beneficiaries so coded.

### D.     Waiver of Liability Under Section 1870(c) of the Social Security Act

The ALJ determined that plaintiff was not without fault in causing or accepting the overpayment in question, and therefore that recovery of the overpayment was not waived pursuant to § 1870(c) of the Social Security Act.  See A.R. at 00049.  The ALJ stated that as a provider of health care services and participant in the Medicare program, plaintiff had not met its requirements "to maintain records and ... keep and submit sufficient medical documentation if requested that

17

[would] reflect the need for the services provided and the nature of those services." A.R. at 00049.

Section 1870 of the Social Security Act "prohibits recovery of a Medicare overpayment from an individual who is without fault when it would either defeat the purposes of Title II and XVIII of the [A]ct or would be against equity and good conscience."[13] A.R. at 00049; see 42 U.S.C. § 1395gg(c). Section 7102 of the Medicare Carrier Manual ("MCM") states that a provider of services is without fault where it exercises reasonable care in the billing for, and acceptance of, payments made to it by the Medicare Program. See A.R. at 000387. A provider is deemed to have exercised reasonable care if it made "a complete disclosure of all material facts pertaining to the claim, and took into consideration all the information available at the time that it billed for its services." A.R. at 00388. As a provider, plaintiff was required to know the applicable law and regulations regarding the requisite documentation needed for entitlements and reimbursements under the Medicare Program based on "its receipt of CMS notices, including manual issuances, bulletins, or other written guides or directives from intermediaries, or carriers, or [Quality Improvement Organizations]." See 42 C.F.R. § 411.406(e). Both parties agree that the medical documentation requirements relating to the relevant codes at issue are contained in LMRP 13009, which lists specific requirements regarding the requisite documentation for psychiatric and psychological services. (Docket Nos. 10, p. 4; 23, p. 2; 30-1.) In addition, the carrier's medical director testified during the ALJ hearing that the carrier provided seminars to instruct suppliers and providers as to the proper documentation methods. See A.R. at 1495-96.

---

[13] Under the statute, "any payment under [42 U.S.C. §§ 1395 et seq.] to any provider of services or other person for items or services furnished any individual shall be regarded as a payment to such individual." 42 U.S.C. § 1395gg(a).

Based on the foregoing, the court finds that plaintiff was not without fault in causing or accepting the overpayment, due to its failure to comply with the relevant documentary requirements. See Gary Gibbon, M.D., Inc. v. Thompson, 121 Fed. Appx. 703, 705 (9th Cir. 2005) (doctor found to be not without fault and therefore ineligible for waiver of recoupment under Section 1870(c) where court determined he had notice of relevant rule, as it had been set forth in the Medicare carrier's manual since 1993); Samuel Nigro v. Nationwide Mutual Insurance, 2001 WL 36192034 (H.H.S. Apr. 30, 2001) ("appellant had constructive knowledge based on acceptable standards of practice in the medical community ... and was on notice from the June 1993 and April 1995 carrier newsletters that certain specific documentation would be required in order to bill code 90862.").

Accordingly, the court finds that the ALJ's determination regarding waiver under § 1870(c) was based on substantial evidence, and is hereby AFFIRMED.

## IV.  CONCLUSION

For the reasons explained above, it is hereby concluded that the ALJ's decision is supported by substantial evidence in the record.  Therefore, the motion for judgment on the pleadings (Docket No. 10) is GRANTED and the decision of the Secretary is AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 3rd day of January 2011.

s/Marcos E. López  
U.S. MAGISTRATE JUDGE